**NOT FOR PUBLICATION**                                                                 [7,8]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| DAVID WIRTZ, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-208 (FLW) |
| | : | |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| CASINO CONTROL COMMISSION, DIVISION | : | |
| OF GAMING ENFORCEMENT, ATTORNEY | : | |
| GENERAL OF NEW JERSEY, AND STATE OF | : | |
| NEW JERSEY, | : | |
| | : | |
| Defendants. | : | |

---

**WOLFSON, UNITED STATES DISTRICT JUDGE**

On January 11, 2005, Plaintiff David Wirtz filed a Complaint in this Court in which he asserted civil rights claims under 42 U.S.C. §§ 1983 and 1985, as well as certain state law claims, arising out of the New Jersey Casino Control Commission's ("Commission") final administrative decision denying his application for a casino employee license and its revocation of his casino service employee registration.   Two days later, Plaintiff filed an appeal in the New Jersey Superior Court, Appellate Division, contesting the Commission's final decision solely under state law.   Presently before this Court is a motion by the Commission, the New Jersey Division of Gaming Enforcement, the Attorney General of New Jersey, and the State of New Jersey (collectively "Defendants") to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.   Alternatively, Defendants assert that even if subject matter jurisdiction exists, the Court should abstain from exercising such jurisdiction and defer to the

ongoing state proceedings in this case, pursuant to the principles established in <u>Younger v. Harris</u>, 401 U.S. 37 (1971) and its progeny.  Finally, Defendants also urge the Court to dismiss Plaintiff's Complaint pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6) for failure to state a claim upon which relief may be granted.  Having considered the moving, opposition, and reply papers, and for the reasons that follow, the Court finds that abstention is proper and declines to exercise jurisdiction over Plaintiff's Complaint at this time.

## I.    BACKGROUND

On August 29, 2000, Plaintiff applied for a casino service employee registration, which the Commission granted on August 31, 2000.  <u>See</u> Plaintiff's Complaint ("Compl."), Ex. A: Initial Commission Decision ("Ex. A") at 2.  On June 26, 2001, Plaintiff applied for a casino employee license.  <u>Id.</u>  On July 6, 2001, the Commission granted Plaintiff a temporary casino employee license.  <u>Id.</u>  In a letter report dated May 28, 2002, the Division of Gaming Enforcement ("Division") objected to the Commission's decision to temporarily licence Plaintiff and also requested that the Commission revoke his casino employee registration.  <u>Id.</u> at 3.  The Division alleged that Plaintiff was disqualified for casino employment pursuant to § -86(c)(1) and § -86(g) of the Casino Control Act ("Act"), <u>N.J. Stat. Ann.</u> § 5:12-1 to -210.

The Division's specific objection to Plaintiff's casino employee registration and temporary license arose out a 1990 armed standoff between Plaintiff and the police, which escalated into a gun battle resulting in injuries to a civilian, two officers, and Plaintiff.  On February 7, 1990, police officers arrived at a rooming house in which Plaintiff was residing to execute a warrant for his arrest. Compl. at ¶ 8; Ex. A at 5.  Believing that the officers had sexually assaulted him in the past and intended to do so again, Plaintiff locked himself inside his room and refused to surrender to them. Compl. at ¶ 8; Ex. A at 5.  In response to Plaintiff's "irrational"

behavior, the officers called to the scene Michael Blount, a social worker from a community mental health crisis center. Compl. at ¶ 9; Ex. A at 5.  After Blount failed to convince Plaintiff to surrender to police, he and at least two officers forced their way into Plaintiff's room. Compl. at ¶ 10; Ex. A at 5.  As they entered, Plaintiff fired a .22 caliber rifle at the group; the bullet passed through Blount's shoulder and struck an officer. Compl. at ¶ 11; Ex. A at 5.  Blount and the officers withdrew, and a standoff ensued as police awaited the arrival of a SWAT team. Compl. at ¶ 12; Ex. A at 5.  Before the standoff ended, Plaintiff shot a second officer and was hit by eighteen gunshots from officers returning fire. Compl. at ¶ 12; Ex. A at 5.

After his arrest, Plaintiff was treated at Cooper Hospital and remanded to a state psychiatric facility for pre-trial confinement. Compl. at ¶ 13; Ex. A at 5.  He was indicted and charged under state law with attempted murder, aggravated assault, aggravated assault with a deadly weapon, aggravated assault of a police officer, and various weapons offenses. See Compl. at ¶ 13; Ex. A at 6-7.  In 1992, a state court found Plaintiff incompetent to stand trial, and, a year later, the court accepted his plea of "not guilty by reason of insanity" and entered an acquittal by reason of insanity. Compl. at ¶ 13; Ex. A at 5.  The court remanded Plaintiff to a state psychiatric facility where, after further evaluation, he was diagnosed with paranoid schizophrenia and confined. Compl. at ¶ 14-15; Ex. A at 5.  Over the next seven years, Plaintiff's mental health improved and he transitioned from confinement to a residential group home, and, eventually, back to independent living. Compl. at ¶ 17; Ex. A at 5.  In September 2000, Plaintiff began employment at Bally's Casino in Atlantic City. Compl. at ¶ 19.  After the Division objected to Plaintiff's application for casino employee license, Bally's placed him on administrative leave. Compl. at ¶ 24.

At Plaintiff's request, the Commission scheduled a hearing before a hearing examiner, for

consideration of the Division's objection to his temporary casino employee license and the Division's request that the Commission revoke his casino employee registration. See Ex. A at 6. Plaintiff failed to appear at the hearing or respond to the hearing examiner's subsequent inquiries, and, on September 18, 2002, the hearing examiner entered an order denying Plaintiff's request for a casino employee license and revoking his casino employee registration. Id. at 2-3, 6. Thereafter, Bally's terminated Plaintiff's employment. Id. at 6; Compl. at ¶ 24.  Plaintiff retained counsel and the hearing examiner granted his request to reopen the proceedings. Ex. A at 3.

At a May 8, 2003 pre-hearing conference, the parties identified a list of substantive issues for the hearing examiner to decide. Id. at 3-4. After an August 20, 2003 hearing, Plaintiff filed a motion for summary judgment on all issues. Id. at 4.  On October 23, 2003, the hearing examiner heard oral arguments on Plaintiff's motion and ordered the parties to submit supplemental briefs. On February 20, 2004, the hearing examiner denied Plaintiff's motion. Id.  Plaintiff filed a motion for reconsideration, which the hearing examiner denied on February 26, 2004. Id.   Plaintiff then filed a motion for leave to file an interlocutory appeal to the full Commission, which the Commission denied on June 9, 2004. Id.  On June 18, 2004, Plaintiff filed a notice of motion for leave to appeal and to stay the proceedings in the New Jersey Superior Court, Appellate Division, which that court denied. Id.  On July 7, 2004, the Commission submitted a written opinion, as required under the New Jersey Court Rules, amplifying the reasons for its denial of Plaintiff's motion for leave to file an interlocutory appeal. Id.

On July 20, and 21, 2004, the parties appeared at a hearing on the Division's objection to Plaintiff's temporary license and its request that the Commission revoke his casino employee registration. Id.  The hearing examiner filed an initial decision on October 22, 2004, in which he affirmed his earlier order denying Plaintiff's application for a casino employee license and

revoking his casino employee registration. Id. at 12; Compl. at ¶ 34.  The hearing examiner also held that Plaintiff was eligible for employment in "a non-credential hotel position," that is, a position for which registration or a license under the Act is not required. Ex. A at 12.  The hearing examiner further ordered that plaintiff could reapply for a casino employee license five years from the date the initial decision was adopted by the Commission, as set forth in N.J. Admin. Code § 19:41-8.8, or petition for early reapplication no earlier than one year from such time, in compliance with the regulations in N.J. Admin. Code § 19:41-8.9.  Finally, the hearing examiner ordered that Plaintiff provide the Commission with periodic evidence of his compliance with any physician-prescribed mental health program. Ex. A at 13.

The full Commission convened on December 1, 2004, to consider the hearing examiner's initial decision, as well as the exceptions to that decision which Plaintiff and the Division filed. Compl. at ¶ 34.  The Commission adopted the hearing examiner's initial decision with two modifications. Id.  First, the Commission barred Plaintiff from filing a petition for early reapplication pursuant to N.J. Admin. Code § 19:41-8.9. Id.  Second, the Commission clarified that, as a condition of employment in any position not requiring registration or a license under the Act, every three months Plaintiff must submit a letter from his treating physician to the Commission and the Division, which certifies that Plaintiff is complying with the treating physician's prescribed medicinal program. Id.

## II.  DISCUSSION

### A.  Jurisdiction

A facial attack on a court's jurisdiction "is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction." The Med. Soc'y of New Jersey v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002).  Thus, a court "must only consider the allegations of the complaint and

the documents referenced therein and attached thereto in the light most favorable to the plaintiff." Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Defendants' argument that the Court is deprived of subject matter jurisdiction as a consequence of Plaintiff's failure to plead his § 1983 claim with specificity is without merit. As recently as last month, the Court of Appeals for the Third Circuit reaffirmed the principle that a federal court may not impose upon a litigant asserting a § 1983 claim a pleading standard any higher than that required under the liberal notice requirement of Fed. R. Civ. P. 8(a)(2). Evancho v. Fisher, 423 F.3d 347, 351-52 (3d Cir. 2005). See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993); Weston v. Commonwealth of Pennsylvania, 251 F.3d 420 (3d Cir.2001); Abbott v. Latshaw, 164 F.3d 141 (3d Cir.1998). Here, Plaintiff's Complaint includes "a short and plain statement of the claim showing that the pleader is entitled to relief," and thus satisfies the standard of notice pleading under the Rule. Nothing more is required. Evancho, 423 F.3d at 352. Accordingly, the Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

**B.     Younger Abstention**

Defendants also argue that the Court should abstain from exercising jurisdiction in this case and defer to the ongoing state proceedings initiated by Plaintiff. In support of that position, Defendants rely on the abstention doctrine set forth and developed in Younger, 401 U.S. at 37, and its progeny. In Younger, the Supreme Court created an exception to the general rule that the pendency of state court proceedings is not a reason for a federal court to decline to exercise jurisdiction established by Congress. See Yi Tang v. Tsui, 416 F.3d 199, 201 (3d Cir. 2005). The Younger Court held that when federal adjudication of a particular claim would offend principles of comity by disrupting ongoing state proceedings, a federal court may abstain from exercising

jurisdiction.[1] 401 U.S. at 43-44.  Three requirements must be satisfied before <u>Younger</u> abstention is appropriate: (1) there must be ongoing state proceedings that are judicial in nature and with which the federal proceedings will interfere; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise the federal claims. <u>Yi Tang</u>, 416 F.3d at 202.  Even if each of the above elements are satisfied, abstention is not appropriate if the plaintiff establishes that "extraordinary circumstances exist ... such that deference to the state proceedings will present a significant and immediate potential for irreparable harm to the federal interests asserted." <u>Zahl v. Harper</u>, 282 F.3d 204, 209 (3d Cir. 2002).

Since the three necessary prerequisites for abstention are met here, and Plaintiff makes no showing of "extraordinary circumstances" requiring that I do otherwise, I decline to exercise jurisdiction over this case.  First, there is no dispute that state judicial proceedings in this case are ongoing.  Though Plaintiff neglected to acknowledge in his Complaint that he filed an appeal from the Commission's final decision with the New Jersey Superior Court, Appellate Division, he has confirmed such in his brief in opposition to Defendants' motion.  The state proceedings have not been stayed, and this Court's adjudication of Plaintiff's claims, some of which are identical to those to be addressed in the state proceedings, would undoubtedly interfere with such proceedings.

Second, the state proceedings in this case implicate New Jersey's strong interest in strict regulation of its gaming industry. <u>See e.g.</u>, <u>Knight v. City of Margate</u>, 86 N.J. 374, 392 (1981) ("[I]t is the pronounced policy of this State to regulate and control the casino industry with the

---

[1] Though <u>Younger</u> dealt with a criminal matter, the Court has since expanded the abstention doctrine to include civil proceedings and state administrative proceedings. <u>Moore v. Sims</u>, 442 U.S. 415 (1979).

utmost strictness and to the end that public confidence and trust in the honesty and integrity of the State's regulatory machinery can be trusted").  Indeed, New Jersey has worked from the inception of its casino industry to devise a statutory and regulatory apparatus to effect that goal.  In 1976, the State of New Jersey amended Art. IV, § 7, par. 2 of its Constitution to allow the Legislature to authorize the establishment and operation of gambling houses or casinos in Atlantic City.  See generally Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, 85 N.J. 325, 338, *appeal dismissed*, 454 U.S. 804 (1981).  A year later, the Legislature enacted the Casino Control Act, N.J. Stat. Ann. § 5:12-1 to -210.  The Act is designed, in part, to further "public confidence and trust in the credibility and integrity of the regulatory process and of casino operations. N.J. Stat. Ann. § 5:12-1(b)(6); see also Campione v. Adamar of New Jersey, Inc., 155 N.J. 245, 257 (1998). In that connection, the Act vests the Commission with broad regulatory power and authorizes it to supervise and control "virtually every facet of casino gambling and its potential impact upon the public." Knight, 86 N.J. at 381.  Among the specific duties of the Commission is the licensing of all casino employees. N.J. Stat. Ann. § 5:12- 63(a); §§ 5:12-85 to -91.  In discharging its licensing responsibility, the Commission is required to determine whether an applicant is disqualified under any of the criteria set forth under N.J. Stat. Ann. § 5:12-86.[2]  While the Commission exercises quasi-legislative and quasi-judicial power, the Division -- a component of the New Jersey Attorney General's Office -- is responsible for enforcing the provisions of the Act and the regulations promulgated thereunder. See N.J. Stat. Ann. § 5:12-63; §§ 5:12-76 -79; Campione, 155 N.J. at 257.  Clearly, New Jersey's extensive efforts to strictly regulate its casino industry

---

[2] Specifically, N.J. Stat. Ann. § 5:12-86 requires the Commission to deny a casino employment license to any applicant convicted of a crime listed in § -86(c).  In addition, N.J. Stat. Ann. § 5:12 -86(g) requires the Commission to deny a casino employment license to any applicant who commits an "act[] which would constitute any offense" enumerated in § -86(c), "even if such conduct has not been or may not be prosecuted under the criminal laws of [New Jersey] or any other jurisdiction or has been prosecuted under the criminal laws of [New Jersey] or any other jurisdiction and such prosecution [was] terminated in a manner other than with a conviction...."

leave no doubt as to the importance of the state interests implicated in the state proceedings on Plaintiff's claims.

Third, the state proceedings in this case afforded Plaintiff adequate opportunity to raise the federal civil rights claims he asserts in his Complaint. Rather than combine those claims with his state claims for adjudication by the state court, Plaintiff has elected to address his federal claims in federal court. That election is his to make. See England v. Louisana State Bd. Of Med. Examiners, 375 U.S. 411, 421 (1964). However, Plaintiff includes those same state claims in the Complaint he filed in this Court. While Plaintiff is free to chose the forum in which his claims will be decided, the inevitable disruption which will result from this Court's attempt to adjudicate his state claims while those identical claims are under consideration in state proceedings is precisely the harm the Supreme Court sought to remedy in developing the Younger abstention doctrine.

Finally, Plaintiff has not demonstrated the existence of any "extraordinary circumstances" which might indicate that deference to the state proceedings in this case will result in "a significant and immediate potential for irreparable harm" to the federal claims he asserts. See Zahl, 282 F.3d at 209. To the contrary, in his brief in opposition to Defendants' motion, Plaintiff informs the Court that he "anticipated at the outset" that the Younger abstention doctrine would apply, "and does not oppose staying these proceedings in conformity with Crane v. Fauver, 762 F.2d 325 (3d Cir. 1985)." Neither party directly addresses the question of whether a stay or dismissal is appropriate in the circumstances of this case. However, since Plaintiff requests entry of a stay, while Defendants seek outright dismissal, the court must decide the issue. Although the facts of this case are somewhat distinct from those in Crane, I conclude that a stay is appropriate.

9

In Crane, two former Trenton State Prison corrections officers asserted § 1983 claims in federal court in connection with their alleged wrongful termination from employment. Id. at 326. Before doing so, the plaintiffs administratively appealed their terminations and an Administrative Law Judge ("ALJ") ordered them reinstated with back pay. Id.  The plaintiffs then filed their federal action, and, while it was pending, the New Jersey Superior Court, Appellate Division reversed the ALJ and remanded the case for further proceedings. Id.  The defendants then filed a motion for summary judgement in the federal action, seeking dismissal of the plaintiffs' complaint on abstention grounds. Id. at 327.  The district court concluded that Younger abstention was appropriate, and dismissed the plaintiffs' complaint without prejudice. Id. at 327-28.

The Court of Appeals for the Third Circuit reversed, and held that while the district court correctly declined to *exercise* jurisdiction, it should have nonetheless *retained* jurisdiction. Id. at 328.  The Court of Appeals explained that since the only relief available to the plaintiffs in the state proceedings was dismissal of the charges against them and back pay, a stay of the federal proceedings was required to preserve a forum in which they could assert their federal claims and seek relief otherwise unavailable in the state proceedings.[3] Id.  The Court of Appeals also noted that the district court's dismissal of the plaintiffs' complaint raised the specter that their federal claims would be rendered time barred at the conclusion of the state proceedings. Id. at 329.

Here, Plaintiff has specifically elected to withhold his federal claims from the ongoing state proceedings in favor of adjudication by a federal court.  Thus, while this case is procedurally distinct from Crane, the substantive effect is identical.  Plaintiff has asserted a claim for relief

---

[3] In addition to their § 1983 claims, the plaintiffs also asserted claims for attorneys' fees pursuant to § 1988.

10

under federal law which is unavailable to him in the state court, consequently, dismissal of his Complaint is not appropriate. See Deakins v. Monaghan, 484 U.S. 193, 202-03 (1988) (holding that when abstaining under Younger, a district court must stay, rather than dismiss, claims not cognizable in parallel state proceedings); Crane v. Fauver, 762 F.2d 325 (3d Cir. 1985) ("we cannot justify dismissing a claim for constitutional damages and consequent attorney's fees when the state forum is unable, as it is here, to grant that relief.") (quoting Williams v. Red Bank Bd. of Educ., 662 F.2d 1008, 1023-24 (3d Cir. 1981), *overruled on other grounds as recognized in* Schall v. Joyce, 885 F.2d 101, 108 (3d Cir.1989)).  Accordingly, Plaintiff's case shall be stayed pending resolution of all parallel state proceedings.

## III.    CONCLUSION

For the reasons stated above, Defendants' motion is granted in part and denied in part.  I find that abstention is appropriate and decline to exercise jurisdiction over Plaintiff's claims at this time.  This matter is stayed and shall be administratively terminated pending resolution of all parallel state proceeding.  At that time, Plaintiff may reopen the case by letter application to the Court.  Further, having found abstention appropriate, I do not address the merits of Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants may re-file such motion upon resumption of this action.  An appropriate Order shall follow.


/s/ Freda L.Wolfson
Honorable Freda L. Wolfson
United States District Judge


Date: October 24, 2005

11